UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60478-CIV-MARRA

In re:

CLIFFORD AND ALETHIA FORTNER,

Debtor.
_____/

KEITH MARK GAGNON,

Appellant,

v.

CLIFFORD FORTNER and ALETHIA
FORTNER a/k/a ALETHIA HOUSEN,

Appellees.

_____/

## OPINION AND ORDER

This cause is before the Court on the appeal by Keith Mark Gagnon ("Appellant"
"Gagnon") of the orders of the bankruptcy court entering judgment in favor of
Clifford Fortner and Alethia Fortner ("Appellees" "Fortners") on count one of Appellant's
Complaint, and the order denying Appellant's motion to reconsider. (DE 1.)  The Court has
carefully considered the appeal, the briefs of the parties, the entire record on appeal, and is
otherwise fully advised in the premises.

I.  Background

The facts, based upon Mr. Gagnon's statement of facts in his appellate brief[1] and the appellate record, are as follows:

On April 4, 2006, Mr. Gagnon was walking his dog in his neighborhood, when Mr. Fortner shot Mr. Gagnon in the abdomen with his .38 revolver causing permanent and continuing injuries to him.  After firing that shot, Mr. Fortner then struck Mr. Gagnon twice in the head.

Mr. Gagnon brought a state court suit against Mr. Fortner, alleging assault, battery and negligence, and joined Mrs. Fortner as a participant and responsible party.  Mr. Fortner notified his insurance company of the incident through Florida Insurance Guaranty Association ("FIGA") in order for the insurance company to defend both Mr. and Mrs. Fortner.  On or about September of 2008, FIGA filed a separate complaint for declaratory judgment against Mr. Gagnon and Mr. Fortner alleging the insurance policy did not cover intentional acts by Mr. Fortner.  On February 9, 2009, FIGA joined Mrs. Fortner after she was added in the state trial court litigation.  The state court entered a final declaratory judgment for FIGA, finding the acts of the Fortners were intentional and there was no insurance coverage or duty to defend.

In the state court tort action, Mr. Gagnon submitted a first request for admissions to both Mr. and Mrs. Fortner.  They neither responded to the admissions nor did they seek an extension of time to respond. As a result, the trial court deemed the facts asserted in the request admitted. Among the facts deemed admitted were the following: Mr. Fortner intended to kill Mr. Gagnon; Mr. Fortner was not acting in self-defense; Mr. Gagnon did not possess a weapon; Mr. Fortner informed his wife that he intended to shoot Mr. Gagnon; Mr. Fortner pistol whipped Mr.

---

[1] Appellees do not challenge Appellant's statement of fact.

Gagnon; Mr. Fortner intended to cause serious bodily injury to Mr. Gagnon; and Mr. Fortner made no efforts to call the police before shooting Mr. Gagnon.  In addition, the state trial court deemed true all the following admissions with respect to Mrs. Fortner: Mr. Fortner intended to shoot Mr. Gagnon; Mr. Gagnon did not have a weapon; Mr. Fortner was not acting in self-defense; Mrs. Fortner had a duty to protect Mr. Gagnon as a legal invitee on her property; and Mrs. Fortner knew of the animosity between the two men, yet did nothing to stop the shooting, including calling the police.  The state trial court entered a judgment of liability against the Fortners based upon the facts deemed admitted and the sworn affidavit of Mr. Gagnon.

A  jury then heard the issue of damages and returned a verdict finding the Fortners jointly and severally liable to Mr. Gagnon in the amount of $421,800.00 in compensatory damages, plus six percent interest per annum.  As a result, a final judgment was entered in favor of Mr. Gagnon and against the Fortners in the amount of $421,800.00.  The Fortners have not satisfied the final judgment. Mr. Gagnon subsequently filed a motion for an award of attorney's fees. No hearing was held in the trial court due to the bankruptcy filing by the Fortners and the automatic stay. The Fortners did not file a notice of appeal of the jury verdict or the final judgment. All post-judgment motions by the Fortners were denied.

As a result of the state court judgment, the Fortners filed a chapter 7 bankruptcy case.  In response,  Mr. Gagnon filed a six-count adversary complaint on May 17, 2011, which included a count for nondischargeability of debt under 11 U.S.C. § 523(a)(6).  Initially, the Fortners did not file a responsive pleading. Mr. Gagnon filed a motion for entry of a clerk's default, which was entered the same day.  On June 27, 2011, the Fortners filed an Answer, which they subsequently amended on June 28, 2011 to include a defense of self-defense. They also filed a motion to

vacate the clerk's default, which the bankruptcy court granted.[2]  The bankruptcy court decided at

the pretrial hearing that malice would be the only issue tried since there was no dispute as to the

intentional acts of the Fortners.

Prior to trial, the bankruptcy court ruled on Mr. Gagnon's summary judgment motion and

concluded that the state trial court judgment was preclusive on the willfulness prong of section

523(a)(6), but not preclusive on the malice prong of that subsection.  At the trial, Mr. Gagnon,

Mr. Gagnon's girlfriend, Mr. Fortner and two police officers testified.  The undisputed facts

included evidence that Mr. Fortner shot and pistol whipped Mr. Gagnon and that no weapon was

found on Mr. Gagnon.   The disputed facts included whether Mr. Gagnon: (1) possessed a knife,

(2) threatened Mr. Fortner and (3) was the initial aggressor.  Mr. Gagnon's girlfriend testified

that she never saw a knife and she did not take a knife away from Mr. Gagnon.  (Tr. 34-36, DE

3.)  She also testified that Mr. Gagnon did not make any threats.  (Tr. 39.)  Sergeant Gerard

Rylander testified that moments after the shooting, Mr. Fortner told him that Mr. Gagnon

approached him with a knife.  (Tr. 28-30.)  Detective Paula Hall,[3] the lead detective on the case,

testified that she believed Mr. Gagnon was the aggressor and that Mr. Fortner believed Mr.

Gagnon had a knife. (Tr. 64-67.)  She stated that she believed Mr. Fortner acted in self-defense

---

[2] In setting aside the default, the bankruptcy court noted the strong preference for trying the case on the merits and the close timing of the clerk's entry of default to the filing of the Answer.

[3] The transcript reflects that the bankruptcy court admitted portions of Detective Hall's police report that reflected either her observations or her interviews with both Mr. Gagnon and Mr. Fortner. (Tr. 10.)  The bankruptcy court excluded the portions of her report that included interview notes of third parties. (Tr. 13.)  Mr. Gagnon's attorney did not object to this ruling. (Tr. 9-10.)  However, the bankruptcy court's exhibit register (DE 4) does not reflect that the report was admitted.

and therefore he was not charged with a crime. (Tr. 67-68.)  She did, however, note that even though the police conducted a search, they were unable to find a knife.  (Tr. 73.)   Mr. Fortner also testified that he felt threatened by Mr. Gagnon and that Mr. Gagnon passed the knife over to his wife. (Tr. 83-84.)  In contrast, Mr. Gagnon testified that he had no weapon, and he did nothing to provoke Mr. Fortner.  (Tr. 51, 59, 62.)  Furthermore, Mr. Gagnon stated that he had no opportunity to retreat from Mr. Fortner.  (Tr. 104.)  Other evidence before the bankruptcy court included the lack of any criminal charges being brought against either Mr. Gagnon or Mr. Fortner.  (Tr. 29, 54.)

The bankruptcy court ruled that the debt was dischargeable because no malice had been proven.  Specifically, the bankruptcy court found that Mr. Gagnon failed to carry his burden, by a preponderance of the evidence, that Mr. Fortner maliciously injured him.  Thus, the bankruptcy court concluded that the state trial court judgment would not be excepted from discharge under section 523(a)(6), and a judgment was entered in favor of the Fortners on count one of the complaint.  The bankruptcy court later denied Mr. Gagnon's motion for reconsideration. With respect to the motion for reconsideration, the bankruptcy court found that the state trial court judgment was not preclusive on the issue of malice, thereby making it a factual issue for trial. The bankruptcy court concluded that based on the demeanor of the witnesses and Mr. Gagnon's failure to carry his trial burden, it could not find that Mr. Fortner maliciously injured Mr. Gagnon.

Mr. Gagnon makes the following arguments on appeal: (1) the bankruptcy court erred by denying his motion for summary judgment.  Mr. Gagnon contends that the state trial court judgment of liability and damages showed the Fortners acted intentionally and with malice,

making the debt non-dischargeable pursuant to 11 U.S.C. 532(a)(6); (2) the bankruptcy court

erred in accepting the testimony of Detective Paula Hall and (3) the bankruptcy court erred in

vacating the clerk's default.

II. Legal Standard

The Court reviews the Bankruptcy Court's factual findings for clear error and its legal

conclusions *de novo*. In re Globe Manufacturing Corp., 567 F.3d 1291, 1296 (11th Cir. 2009); In

re Club Assoc., 951 F.2d 1223, 1228-29 (11th Cir. 1992).  An appellate court may affirm the

lower court "where the judgment entered is correct on any legal ground regardless of the grounds

addressed, adopted or rejected" by the lower court. Bonanni Ship Supply, Inc. v. United States,

959 F.2d 1558, 1561 (11th Cir. 1992).

III. Discussion

A.  Dischargeability pursuant to 11 U.S.C. § 523(a)(6)

Section 523(a)(6) of Title 11 of the United States Code provides:

Exceptions to Discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not
discharge an individual debtor from any debt–

(6) for willful and malicious injury by the debtor to another entity or to the property of
another entity;

The term "issue preclusion encompasses the doctrines once known as 'collateral estoppel'

and 'direct estoppel.' " Taylor v. Sturgell, 553 U.S. 880, 892 n.5 (2008). Issue preclusion "has

the dual purpose of protecting litigants from the burden of relitigating an identical issue with the

same party or his privy and of promoting judicial economy by preventing needless litigation."

Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).  Issue preclusion principles apply to

6

dischargeability proceedings. <u>Grogan</u> v. <u>Garner</u>, 498 U.S. 279, 284 n.11 (1991).

As explained by the Eleventh Circuit in <u>In re St. Laurent</u>, 991 F.2d 672 (11th Cir. 1993):

> If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect. <u>In re Touchstone</u>, 149 B.R. 721, 725 (Bankr. S.D. Fla.1993). Under Florida law, the following elements must be established before collateral estoppel may be invoked: (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case. <u>In re Yanks</u>, 931 F.2d 42, 43 n.1 (11th Cir. 1991); <u>In re Halpern</u>, 810 F.2d 1061, 1064 (11th Cir.1987); <u>In re Scarfone</u>, 132 B.R. 470, 472 (Bankr. M.D. Fla.1991); <u>see also</u> <u>Mobil Oil Corp. v. Shevin</u>, 354 So.2d 372, 374 (Fla. 1977). While collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, however, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability. <u>Halpern</u>, 810 F.2d at 1064.

<u>Id.</u> at 675-76.

"Assault is defined as an intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt." <u>Lay</u> v. <u>Kremer</u>, 411 So. 2d 1347, 1349 (Fla. Dist. Ct. App. 1982); <u>Sullivan v. Atlantic Fed. Savings & Loan Ass'n</u>, 454 So. 2d 52, 54 (Fla. Dist. Ct. App. 1984) (same).  A tortious battery is established when the plaintiff suffers a harmful or offensive contact and the defendant intended to cause such contact.  <u>Rubio v. Lopez</u>, 445 F. App'x 170, 175 (11th Cir. 2011); <u>Chorak v. Naughton</u>, 409 So. 2d 35, 39 (Fla. Dist. Ct. App. 1981).  The elements of a negligence claim are: "(1) the duty requiring the defendant to adhere to a standard of conduct, (2) a breach of that duty, (3) a 'reasonably close causal connection' between the breach of the duty and the ensuing injury, and (4) demonstration of actual harm to the claimant ." <u>Michaud v. Seidler</u>, No. 08-80288-CIV,

2008 WL 4927015, at *3 (S.D. Fla. 2008) (citing <u>Williams v. Davis</u>, 974 So.2d 1052, 1056 (Fla. 2007)).  Significantly, negligence does not contain the element of intent. <u>City of Miami v. Sanders</u>, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996).  Negligent acts are not excepted from discharge. <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 64 (1998).  Lastly, in Florida, an intentional assault and battery committed without legal justification supplies proof of malice. <u>Joab, Inc. v. Thrall</u>, 245 So. 2d 291, 293 (Fla. Dist. Ct. App. 1971); <u>see</u> <u>Myers v. Central Florida Investments, Inc.</u>, 592 F.3d 1201, (11th Cir. 2010) (noting this rule and stating that "[d]ecades of Florida case law have made it clear that a finding of battery is sufficient to trigger punitive damages").[4]

Here, in order to find liability on behalf of the Fortners for assault or battery, the state trial court needed to find that the Fortners acted intentionally, but not maliciously.  In other words, malice is not an element of either of these torts.  Furthermore, given that Mr. Gagnon received an award of compensatory, and not punitive damages, the jury did not make a finding on malice.  Lastly, with respect to the negligence claim, the state trial court was not required to make any finding with respect to intentional or malicious acts.

With this in mind, the Court concludes that the bankruptcy court did not err by finding that the state trial court's judgment was not preclusive on the issue of malice.  Indeed, the state trial court did not address malice or make a finding on the question of malice.[5]  Nor was the issue

---

[4] Mr. Gagnon relies on <u>In re Williams</u>, 173 B.R. 912 (Bankr. W.D. Ark. 1994).  However, in that case, the jury awarded punitive damages, which required a finding of a willful or malicious harm. <u>Id.</u> at 915.  In the instant case, no such award was made.

[5] Although Mr. Gagnon relies heavily on the order by the state trial court deeming the admissions of the Fortners admitted, that order was granted based the Fortner's failure to deny or object to the admissions.  As such, it is not an actual finding by the state trial court for collateral estoppel purposes.  At best, it is merely record evidence before the state trial court.  <u>See</u> Fed. R. Civ. P. 36(b) ("[A]n admission under this rule is not an admission for any other purpose and

of malice litigated in state trial court.  As such, it was not a critical and necessary part of the state trial court's judgment.  For all these reasons, the Court finds the bankruptcy court did not err in concluding issue preclusion did not apply.

In so holding, the Court also finds that the bankruptcy court did not err in its factual finding that Mr. Gagnon did not meet his burden to demonstrate malice.  See Grogan v. Garner, 498 U.S. 279, 291 (1991) (the preponderance of the evidence standard applies to all exceptions of dischargeability of debts contained in section 523(a) of the bankruptcy code).  "Malice can be implied when a debtor commits an act that is 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.' " In re Thomas, 288 F. App'x 547, 549 (11th Cir. 2008) (quoting In re Walker, 48 F.3d 1161, 1164 (11th Cir. 1995)).  "The deliberate shooting of another human being, not done in self-defense, is a malicious act in every sense of the word. One does not fire a pistol at another person without intending to kill or seriously injure him. An unjustified intent to kill or seriously injure someone reflects ill-will." In re Levins, 434 B.R. 910, 923 (S.D. Fla. 2010) (quoting Smith v. Pitner (In re Pitner), 6 B.R. 731, 733 (E.D. Tenn. 1980), aff'd, 696 F.2d 447 (6th Cir.1982)).[6]  The evidence at trial showed conflicting evidence on the issue of whether Mr. Fortner acted in self-defense.  This Court must give due regard to the bankruptcy court's evaluation and determination on the credibility of witnesses since it was the trier of fact. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985); Childrey v.

---

cannot be used against the party in any other proceeding); Fla. R. Civ. P. 1.370(b) (same); see also Matter of Cassidy, 892 F.2d 637, 640 (7th Cir. 1990) (judgment based on admissions in tax court cannot be used to prevent litigation of factual question in bankruptcy court).

[6] The Court is not persuaded by Mr. Gagnon's reliance on In re Hazard, 166 B.R. 145 (Bankr. E.D. Mo. 1994).  There, the state trial court rejected the self-defense claim. Id. at 147.

9

Bennett, 997 F.2d 830, (11th Cir. 1993) ("it is the exclusive province of the judge in non-jury trials to assess the credibility of witnesses and to assign weight to their testimony").  Because the bankruptcy court found that there was contradictory evidence on the issue of self-defense and noted that no criminal charges were brought against the Fortners, the Court finds the bankruptcy court did not err in concluding there was not an adequate showing of malice.

      B.  Testimony of Detective Paula Hall

      Mr. Gagnon contends the bankruptcy court erred by accepting the testimony of Detective Paula Hall because she (1) omitted from her police report an interview of a witness; (2) included hearsay in her testimony; (3) testified that she believed Mr. Gagnon was the aggressor and (4) testified that she believed Mr. Fortner acted in self-defense.

      With respect to Detective Hall's testimony regarding whether Mr. Gagnon or Mr. Fortner was the aggressor and whether she believed Mr. Fortner acted in self-defense, the Court finds no error in admitting this testimony.  In fact, Mr. Gagnon's sole complaint on the admission of this testimony is not evidentiary.  Instead, he simply takes issue with the fact that Detective Hall concluded, based on her interview with Mr. Fortner, that he acted in self-defense, despite the fact that she never recovered a knife.  Such a complaint merely goes to the weight of the evidence, not its admissibility.  The bankruptcy court was certainly entitled to credit this testimony, especially since Mr. Fortner testified that he felt threatened by Mr. Gagnon and that Mr. Gagnon passed the knife to his wife.

      Equally unpersuasive is Mr. Gagnon's contention that Detective Hall's testimony should not have been credited by the bankruptcy court because her police report did not include the interview of Mr. Gagnon's girlfriend.  Even assuming Detective Hall did not include the

statement of Mr. Gagnon's girlfriend in her report, that failure would not require the bankruptcy

court to disregard Detective Hall's testimony.  The absence of this information would go to the

weight to be given to Detective Hall's testimony.  The bankruptcy court was free to accept

Detective Hall's testimony as more credible, taking all of the facts and circumstances into

account.

Lastly, Mr. Gagnon contends that the bankruptcy court admitted hearsay testimony as to

what neighbors told Detective Hall.[7]  The challenged testimony follows:

| | |
|---|---|
| Q: | Did anyone else corroborate the fact that Mr. Gagnon, the victim, had threatened to kill Mr. Fortner? |
| Attorney for Mr. Gagnon: | Your Honor, I think he's asking for hearsay testimony now, so I would object to the question. |
| Attorney for the Fortners: | Judge, if I may, I don't believe I'm asking for any specific testimony, I'm just asking for parts of her investigation, corroboration on the information she's receiving. |
| Bankruptcy Court: | I'll overrule the objection. |
| Q: | So based on your interview, did you find that generally to be true? |
| A: | Yes. |
| Q: | That Mr. Gagnon was the aggressor, what we're calling the victim was the aggressor in this case? |
| A: | Yes. |

(Tr. 65-67.)

First, the actual statements of the witnesses were not admitted.  Rather, the bankruptcy

court merely admitted the fact that the statements were presented to Detective Hall.  Thus, the

testimony was not offered for the truth of the matter asserted, but rather for the fact that the

statements were made to the investigating officer which she used in reaching her ultimate

---

[7] Mr. Gagnon also objects to the bankruptcy court's admission of the statements of Mr. Fortner on hearsay grounds. However, Mr. Gagnon did not raise this objection below and it is therefore not preserved for appellate review.  In re Lett, 632 F.3d 1216, 1226 (11th Cir. 2011).

conclusion as to which of the parties was the aggressor. See Anderson v. United States, 417 U.S. 211, 220 n.8 (1974)("Of course, evidence is not hearsay when it is used only to prove that a prior statement was made and not to prove the truth of the statement."); Brady v. Murphy-Kjos, 628 F.3d 1000, 1002- 03(8th Cir. 2011)( paramedic's statement made to police officer that plaintiff had assaulted a firefighter not inadmissible hearsay because it was admitted to show what the arresting officers knew or thought they knew at the time of the incident).

Moreover, even if this testimony constitutes hearsay, the Court would deem the error harmless.  As the United States Supreme Court has noted, "[i]n bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions. .   .   . There is a 'well established presumption' that *the judge has adhered to basic rules of procedure,'* when the judge is acting as a factfinder." Williams v. Illinois, 132 S. Ct. 2221, 2235 (2012)(emphasis in the original).  Under the harmless error rule, the Court may disregard errors which do not affect substantial rights.  Fed. R. Bankr. P. 9005; Fed. R. Civil P. 61; see In re Club Assocs., 951 F.2d 1223, 1224 n.13 (11th Cir. 1992) (applying rule in bankruptcy context).

C.  Clerk's Default

Mr. Gagnon asserts that the bankruptcy court erred in setting aside the clerk's default because (1) the bankruptcy court granted the motion without hearing any argument; (2) the Fortners did not make a showing of good cause or a meritorious defense and (3) Mr. Gagnon was prejudiced by the vacating of the default.

Rule 55(c) of the Federal Rules of Civil Procedure states that a "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The Court is vested with considerable discretion in ruling on a motion to set aside an entry of default, and the Court's decision will only

be reviewed for abuse of discretion.  Robinson v. US, 734 F.2d 735, 739 (11th Cir.1984); Baez v. S.S. Kresge Co., 518 F.2d 349, 350 (5th Cir.1975).[8]  "[D]efaults are seen with disfavor because of the strong policy of determining cases on their merits." Florida Physicians Insurance Co. v. Ehlers, 8 F.3d 780, 783 (11th Cir.1993). To obtain relief under Rule 55(c), the movant must only make a "bare minimum showing" to support her claim for relief. Jones v. Harrell, 858 F.2d 667, 669 (11th Cir.1988).[9]

In evaluating whether a movant has demonstrated "good cause," courts have considered several factors: whether the default was culpable or willful; whether setting the default aside would be prejudicial to the opposing party; whether the defaulting party presents a meritorious defense; whether public interests have been implicated; whether the defaulting party has suffered significant financial losses; and whether the defaulting party acted promptly to correct the default. Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir.1996). These factors are simply guidelines and are not "talismanic." Id. While willfulness, prejudice, and a meritorious defense are the most often considered factors, "the failure of a [ ] court to expressly consider them does not necessarily constitute an abuse of discretion." KPS & Associates, Inc. v. Designs by FMC, Inc., 318 F.3d 1, 12 (1st Cir.2003).

With respect to Mr. Gagnon's argument that the bankruptcy court erred by not hearing oral argument on the motion to set aside the entry of clerk's default, the Court simply notes that

_____

[8] In Bonner v. City of Pritchard, 661 F.2d 1206, 1207 & 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

[9] To the extent Mr. Gagnon relies upon the higher standard that applies to vacating a default judgment (DE 18 at 23), the Court rejects it.

13

the bankruptcy court is not required to hear oral argument. In re Firstline Corp., No.

06–70145–JDW, 2008 WL 2246902 , at * 2 (Bankr. M.D. Ga. May 29, 2008); see Voter

Verified, Inc., v. Premier Election Solutions, Inc., No. 6:09-cv-1968-Orl-19KRS, 2010 WL

1002648, at * 4-5 (M.D. Fla. Mar. 18, 2010) (no oral argument needed to determine that good

cause exists to set aside a default); cf. 11 U.S.C. 102 (explaining that the term "after notice and

hearing" means that such hearing as is appropriate in the particular circumstances).

  In fact, the bankruptcy court relied on several of the factors that constitute good cause in

this Circuit.  For example, the bankruptcy court noted that the Fortners filed their answer close in

time to the entry of the clerk's default.  Additionally, the bankruptcy court noted the strong policy

of determining cases on their merits.  Moreover, the record provides additional support for a

finding of good cause.  See Thompkins v. Lil' Joe Records, Inc., 476 F.3d 1294, 1303 (11th Cir.

2007) (an appellate court can affirm a judgment on appeal on any ground that finds supports in

the record.); Cuddeback v. Florida Bd. of Educ., 381 F.3d 1230, 1235 (11th Cir. 2004) (same).

Although disputed by Mr. Gagnon, the Court finds that the Fortners provided the bankruptcy

court with an adequate basis to find a meritorious defense.  Indeed, the Fortners prevailed with

respect to the argument regarding the exceptions to discharge. Lastly, the Court rejects Mr.

Gagnon's claim that he was prejudiced by the vacating of the default because he was forced to

seek summary judgment, engage in trial preparation and file an appeal.  Besides the expense of

litigation, the Court can find no argument or evidence to suggest that Mr. Gagnon was materially

prejudiced.  Nor has Mr. Gagnon articulated actual prejudice to his case. Burrell v. Henderson,

434 F.3d 826, 835 (6th Cir. 2006) ("Delay in adjudicating a plaintiff's claim does not qualify as

sufficient prejudice under Rule 55. Instead, [a plaintiff] would have to show that the delay would

result in a loss of evidence, increased opportunities for fraud, or discovery difficulties.").

      For these reasons, the Court finds that the bankruptcy court did not err in setting aside the clerk's entry of default.

### IV.  Conclusion

      Based upon the foregoing, it is **ORDERED AND ADJUDGED** that the decision on appeal of the bankruptcy court is **AFFIRMED**.  This case is **CLOSED**, and all pending motions are **DENIED** as moot.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of August, 2012.

                            _____
                            KENNETH A. MARRA
                            United States District Judge